# In the United States Court of Federal Claims

No. 16-845
Filed: May 31, 2017

| | |
|---|---|
| WALSH CONSTRUCTION CO., *et. al*,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101–7109;<br>Federal Acquisition Regulation ("FAR"), 48 C.F.R. §§ 52.223-1, 52.243-5;<br>Rules Of the United States Court of Federal Claims ("RCFC") 12(b)(1), 15(a)(2);<br>Tucker Act Jurisdiction, 28 U.S.C. § 1491. |

**Richard David Kalson**, Benesch Friedlander, Coplan & Aronoff LLP, Counsel for Plaintiffs.

**Igor Helman**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION DENYING THE GOVERNMENT'S MOTION TO DISMISS COUNTS I AND II OF THE AMENDED COMPLAINT AND STAYING THE CASE FOR THREE MONTHS TO AFFORD THE CONTRACTING OFFICER THE OPPORTUNITY TO CONSIDER THE MERITS OF COUNT II**

**BRADEN**, *Chief Judge.*

## I. FACTUAL BACKGROUND.[1]

On August 17, 2012, the United States Army Corps of Engineers (the "Army Corps") awarded Contract No. W912DR-12-C-011 (the "Contract") to Walsh Construction Company ("Walsh"), to build a Defense Logistics Agency ("DLA") facility in New Cumberland, Pennsylvania (the "Project"). Gov't App'x at A3–30 (8/17/12 Contract). The August 17, 2012 Contract required Walsh to construct a number of "drilled piers," *i.e.*, concrete-filled columns drilled into the ground and used to support a building's foundation. Gov't App'x at A5–A21.

On November 26, 2012, Walsh entered into a subcontract with Ammero Construction Services, LLC ("Ammero"), under which Ammero was to furnish and install 272 drilled piers.

[1] The relevant facts are derived from: the February 13, 2017 Amended Complaint ("Amend. Compl."), and Exhibits ("Compl. Exs. A–D"); and the Government's Appendix ("Gov't App'x" at A1–A73), submitted with the Government's February 13, 2017 Motion To Dismiss In Part Or, In The Alternative, To Merge Counts ("Gov't Mot.").

Compl. Ex. A (11/26/12 Ammero Subcontract). On December 4, 2012, Ammero subcontracted that work to Richard Goettle, Inc. ("Goettle"). Compl. Ex. B (12/4/12 Goettle Subcontract). Goettle was required to drill shafts into the ground down to a certain depth, or "tip elevation." Amend. Compl. ¶¶ 9–10. The "tip elevations," however, were not calculated by the Army Corps until after the award of the August 17, 2012 Contract. Amend. Compl. ¶¶ 9–12. The Army Corps also inspected the "tip elevation" of each newly drilled shaft, to ensure it met the contract specifications prior to the installation of the drilled piers. Amend. Compl. ¶ 13.

Goettle drilled shafts down to the tip elevation, as specified by the Army Corps, and then moved its drilling equipment to the next shaft. Amend. Compl. ¶ 15. But, during inspection, the Army Corps began to recalculate and set new tip elevations, *i.e.*, "revised tip elevations." Amend. Compl. ¶ 15. This required Goettle to move its drilling equipment back to previously drilled shafts in order to re-drill the shafts to the Army Corps' new tip elevations. Amend. Compl. ¶ 15. The Army Corps continued to conduct additional re-inspections, requiring Goettle to continue to make additional equipment moves. Amend. Compl. ¶ 15. In fact, the Army Corps' inspections and re-inspections forced Goettle to make 471 additional moves to and from the drill shafts, resulting in significant additional costs. Amend. Compl. ¶ 27. In order to adhere to the Project schedule, Goettle was required to acquire additional drilling equipment and personnel. Amend. Compl. ¶ 28.

In addition, Goettle encountered obstructions during the drilling of five of the required shafts, *i.e.*, shaft numbers L-2, L-3, L-4, N.8-3, and N.8-4 (collectively referred to as the "Five Problem Shafts"). Amend. Compl. ¶¶ 35–38. During the drilling of the Five Problem Shafts, Goettle encountered large slabs of rock, weathered rock, voids, open fractures, and open joints that caused the shafts to collapse. Amend. Compl. ¶ 37.

On November 30, 2015, Walsh, acting on behalf of Goettle, submitted a Request For Equitable Adjustment ("REA") for the "additional work at drilled shafts due to differing site conditions and disruption of work flow due to unnecessary inspections," and requested costs in the amount of $8,763,119.00 Gov't App'x at A45. The November 30, 2015 REA incorporated two documents Goettle provided Walsh: Goettle's July 30, 2014 Request for Change Order ("RCO"), in the amount of $7,047,220.00, and Goettle's revised March 19, 2015 RCO, in the amount of $7,100,112.00. Compl. Ex. C. (7/30/14 RCO); *see also* Gov't App'x at A47 (3/19/15 Revised RCO).[2]

Together, the November 30, 2015 REA, and RCOs incorporated therein, provided two bases for an equitable adjustment. First, Walsh requested an equitable adjustment for the "Five Problems Shaft Issue," that presented a "differing site condition" under Federal Acquisition

[2] The only material difference between the July 30, 2014 RCO and the March 19, 2015 RCO was the amount requested.

Regulation ("FAR") 52.243-5.[3] Gov't App'x at A54–A60. Next, Walsh requested an equitable adjustment for the "Downhole Inspection Issue," *i.e.*, reimbursement for additional work undertaken by Goettle as a result of the Army Corps' inspections and re-inspections of the drill shafts. Gov't App'x at A60–A62. Walsh described the "Downhole Inspection Issue" as a differing site condition. Gov't App'x at A60.

On April 18, 2016, an Army Corps Contracting Officer (the "CO") issued a final decision that denied the November 30, 2015 REA in its entirety. Compl. Ex. D at 31. With respect to the Five Problem Shafts, the CO found that the conditions encountered were not materially different from those stated in the August 17, 2012 Contract. Compl. Ex. D. at 36–41. With respect to the Downhole Inspection claim, the CO found that the Army Corps' inspection program was a contract requirement and therefore could not be considered a differing site condition under FAR 52.243-5. Compl. Ex. D at 49–50. In addition, the CO found that the Downhole Inspection claim failed because the August 17, 2012 Contract included an "Inspection of Construction" clause, providing that all work was "subject to Government inspection . . . to ensure strict compliance with the terms of the contract." Compl. Ex. D at 50.

---

[3] FAR 52.243-5 provides:

> (a) The Contracting Officer may, in writing, order changes in the drawings and specifications within the general scope of the contract.
>
> (b) The Contractor shall promptly notify the Contracting Officer, in writing, of subsurface or latent physical conditions differing materially from those indicated in this contract or unknown unusual physical conditions at the site before proceeding with the work.
>
> (c) If changes under paragraph (a) or conditions under paragraph (b) increase or decrease the cost of, or time required for performing the work, the Contracting Officer shall make an equitable adjustment (see paragraph (d)) upon submittal of a proposal for adjustment (hereafter referred to as proposal) by the Contractor before final payment under the contract.
>
> (d) The Contracting Officer shall not make an equitable adjustment under paragraph (b) unless—
>
> > (1) The Contractor has submitted and the Contracting Officer has received the required written notice; or
> >
> > (2) The Contracting Officer waives the requirement for the written notice.
>
> (e) Failure to agree to any adjustment shall be a dispute under the Disputes clause.

48 C.F.R. § 52.243-5.

## II. PROCEDURAL HISTORY.

On July 19, 2016, Walsh, acting on behalf of Ammero and Goettle ("Plaintiffs"), filed a Complaint in the United States Court of Federal Claims. Compl. ¶ 1. The July 19, 2016 Complaint alleged three counts: Count One alleged that the "Downhole Inspection Issue" resulted in Government-caused delay and "additional costs" in the amount of $6,415,974.00; Count Two alleged that the Army Corps breached the duty of good faith and fair dealing by "subjecting Goettle to a myriad of unnecessary and abusive additional equipment, tooling and labor costs," for which damages in the amount of $6,415,974.00 were owed; and Count Three alleged a differing site conditions claim related to the "Five Problems Shafts," for which damages in the amount of $631,247.00 were owed. Compl. ¶¶ 21–41.

On October 19, 2016, the Government filed an Answer. ECF No. 6. On December 12, 2016, the parties submitted a Joint Preliminary Status Report. ECF No. 7. On December 20, 2016, the court convened a telephone status conference. On January 12, 2017, the parties submitted a Joint Proposed Trial Schedule and on January 13, 2017, the court entered a Scheduling Order. ECF Nos. 8–9.

On February 13, 2017, Plaintiffs filed an Amended Complaint, wherein Plaintiffs restated all three counts, but revised the damages sought under Counts One and Two, so that $2,897,367.00 was due for each Count. Amend. Compl. ¶¶ 29, 33.[4] On that same day, the Government filed a Motion To Dismiss In Part, Or In The Alternative, To Merge Counts, wherein the Government argued that the court should dismiss Counts One and Two of the February 13, 2017 Amended Complaint for lack of subject matter jurisdiction or, in the alternative, merge Counts One and Three, because those Counts alleged the same entitlement to compensation. Gov't Mot. at 1.

On February 27, 2017, Plaintiffs filed a Response ("Pl. Resp."). On March 17, 2017, the Government filed a Reply ("Gov't Reply"), together with a Supplemental Appendix ("Gov't Supp. App'x").

## III. DISCUSSION.

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction, under the Tucker Act, to adjudicate any claim that arises under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101–7109, and has been submitted to a CO for a final decision. *See* 28 U.S.C. § 1491(a)(2)( "The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 . . . on which a decision of the contracting officer has been issued[.]"); *see also* 41 U.S.C. § 7104(b)(1)( ("[I]n lieu of appealing the decision of a [CO] . . . to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims.").

---

[4] The July 19, 2016 Complaint and the February 13, 2017 Amended Complaint otherwise are identical.

A claim "arises under" the CDA if it is based on,

> any express or implied contract . . . made by an executive agency for— (1) the procurement of services, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair, or maintenance of real property; or (4) the disposal of personal property.

41 U.S.C. 7102(a).

The term "claim" is defined "as a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract." 48 C.F.R. § 52.233–1. Although a CDA claim need not be submitted in any particular form or use any particular wording, it must contain "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). The CDA also requires that the claim indicate to the CO that the contractor is requesting a "final" decision. *James M. Ellet Const. Co. v. United States*, 93 F.3d 1537, 1543 (Fed. Cir. 1996).

In this case, the February 13, 2017 Amended Complaint includes three CDA counts: Count One alleges a claim for "additional costs" related to the delay caused by the Downhole Inspection Issue; Count Two alleges that the Army Corps breached the duty of good faith and fair dealing; and Count Three alleges a differing site condition based upon the Five Problem Shafts. Amend. Compl. ¶¶ 1, 21–41. The Government counters that Counts One and Two were not submitted to the CO for a final decision, and moves to dismiss those Counts, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 12(b)(1). Gov't Mot. at 11, 15.

### B. Standard of Review For A Motion To Dismiss, Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [RCFC] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). The plaintiff bears the burden of establishing jurisdiction by the preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

### C. The Government's February 13, 2017 Motion To Dismiss, In Part, Or, In The Alternative, To Merge Counts One And Three.

#### 1. The Government's Argument.

The Government argues that Count Two should be dismissed, pursuant to RCFC 12(b)(1), because Plaintiffs did not present a breach of the duty of good faith and fair dealing claim to the CO. Gov't Mot. at 11. The "only claim that was presented to the [CO] was a claim for an equitable

adjustment due to differing site conditions." Gov't Mot. at 11. A differing site condition claim is legally distinct from a claim that the Government breached the duty of good faith and fair dealing, as each claim involves different "elements of proof, determinations of law, potential defenses and/or counterclaims, and underlying policy rationales." Gov't Mot. at 12 (quoting *Renda Marine, Inc. v. United States*, 71 Fed. Cl. 378, 392 (2006)).

A differing site condition claim is specific to building and construction contracts, and requires the contractor to establish, by a preponderance of the evidence, that the condition(s) set forth in the contract materially differ from the subsurface or latent physical conditions at the site. *See Randa/Madison Joint Venture III v. Dahlberg*, 239 F.3d 1264, 1274 (Fed. Cir. 2001) ("In order to establish entitlement to an equitable adjustment by reason of a . . . differing site condition . . . the contractor must prove, by a preponderance of the evidence, that the conditions indicated in the contract differ materially from those it encounters during performance."). By contrast, to establish a claim for breach of the implied duty of good faith and fair dealing, the contractor must establish that the Government acted in a way "specifically designed to reappropriate the benefits the other party expected to obtain from the transaction, thereby abrogating the [G]overnment's obligation under the contract." *See Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010)).

In this case, Plaintiffs presented the Downhole Inspection claim to the CO as a differing site conditions claim. Gov't App'x at A60 (11/30/15 REA stating that a "Type I Differing site condition exists as concerns generally . . . the majority of the remainder of the shafts on the Project"). Plaintiffs, however, did not present the Downhole Inspection claim as a breach of the duty of good faith and fair dealing. Gov't Mot. at 13. As such, Count Two should be dismissed, because Plaintiffs did not submit a "clear and unequivocal claim" that the Government breached the duty of good faith and fair dealing. Gov't Mot. at 14.

In addition, Count One, *i.e.*, the claim for "additional costs" resulting from the "Downhole Inspection Issue," should be dismissed, because it appears to present an alternate legal theory for the breach of the duty of good faith and fair dealing claim alleged by Count Two. Gov't Mot. at 15. In the alternative, to the extent that Count One is a differing site condition claim, it should be merged with Count Three of the February 13, 2017 Amended Complaint. Gov't Mot. at 16 (citing *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1310 (11th Cir. 2000) (holding that two claims should be merged when they are "based on the same underlying allegations and theory")).

**2. Plaintiffs' Response.**

Plaintiffs respond that Count One of the February 13, 2017 Amended Complaint is "based on the same claim previously presented to and denied by" the CO, *i.e.*, the Downhole Inspection claim. Pl. Resp. at 10–11. The Downhole Inspection claim was "*not*" a differing site condition claim, but was based on the Army Corps' "unreasonable application of the Contract-mandated inspection program." Pl. Resp. at 11 (emphasis added). The November 30, 2015 REA distinguished the Five Problem Shafts claim from the Downhole Inspection claim and the CO analyzed the two claims separately. Pl. Resp. at 6–9, 11–13. As such, Count One is legally distinct from Count Three and was presented to the CO. Therefore, it should not be dismissed for lack of subject matter jurisdiction, nor should it be merged with Count Three. Pl. Resp. at 13.

In addition, the good faith and fair dealing claim alleged by Count Two was presented to the CO, because the operative facts underlying that claim were alleged in the November 30, 2015 REA. Pl. Resp. at 15. A claim is not required "to be submitted in any particular form or use any particular wording." *Kansas City Power & Light Co.*, 124 Fed. Cl. 620, 623 (2016). In addition, the contractor need not use the exact terminology of a breach of the covenant of good faith and fair dealing in the claim that is presented to the CO for the United States Court of Federal Claims to have jurisdiction to adjudicate it. *See Scott Timber Co. v. United States*, 333 F.3d 1358, 1365–66 (Fed. Cir. 2003) (holding that the United States Court of Federal Claims had jurisdiction over a good faith and fair dealing claim when the contractor "gave the CO clear notice of a purported breach of contract"); *see also E. & E. Enters. Global, Inc. v. United States*, 120 Fed. Cl. 165, 174–75 (2015) (same). The November 30, 2015 REA alleged that: (1) the Army Corps set the initial, and inaccurate, tip elevations; (2) a "great majority" of the revised tip elevations were inaccurate and had to be revised again; (3) therefore, Goettle was forced to move its equipment on multiple occasions, as a result of the inaccurate tip elevations; and (4) these actions by the Army Corps cost Plaintiffs a "substantial amount" of money, but the Government compensated Plaintiffs only for "the lineal feet drilled at the rock drilling unit price which amounted to only a very small fraction of [the] costs so incurred." Pl. Resp. at 15–16. Since these facts are likewise alleged in Count Two of the Amended Complaint, Plaintiffs have met their burden to present the claim for a final decision by the CO, prior to alleging that claim in the United States Court of Federal Claims. Pl. Resp. at 17.

### 3. The Government's Reply.

The Government replies that "the only claim . . . submitted to the [CO] was [the] equitable adjustment claim stemming from different site conditions allegedly encountered at the project site in New Cumberland, Pennsylvania." Gov't Reply at 1. Plaintiffs did not present a claim for the breach of the implied duty of good faith and fair dealing, because the RCOs included in the November 30, 2015 REA specifically described the Downhole Inspection claim as a differing site condition:

> A type I Differing site condition exists as concerns generally to the majority of the remainder of the shafts on the Project. The severity and type of materials encountered in these shafts, and critically, the [Corps'] approach to addressing the conditions encountered in the shafts, were not revealed by the [Corps'] extensive investigation . . . or otherwise indicated by the Contract Documents.

Pl. Compl. Ex. C. at 11; *see also* Gov't App'x at A60 (same).

The remainder of the November 30, 2015 REA asserts damages incurred as a result of "differing site conditions." Gov't Reply at 6. The November 30, 2015 REA, however, does not allege a breach of contract generally, nor does it allege a breach of the implied contractual obligation to act in good faith and engage in fair dealing. Gov't Reply at 6. As a result, Plaintiffs failed to provide the CO notice of the alleged breach or an opportunity to address it. Gov't Reply at 6 (citing *Simulation Tech., LLC*, 103 Fed. Cl. 105, 110 (2012) ("When the administrative claim focuses on one theory of relief and does not allege facts sufficient to satisfy any of the elements of the theory of relief asserted on appeal, it is unlikely that the appeal has arisen from the same operative facts.")).

Although the November 30, 2015 REA stated that Plaintiffs assumed a certain drilling schedule, that was modified as a result of the Army Corps' inspection requirements, "those statements are insufficient to put the agency on notice of [Plaintiffs'] assertion that the [Army] Corps somehow abrogated its contract obligations," because the legal theory underlying a breach of the implied duty of good faith and fair dealing is not the same as a differing site conditions claim. Gov't Reply at 7–11. As such, Count Two should be dismissed for lack of subject matter jurisdiction.

Finally, with respect to Count One, the Government argues that the court should reject Plaintiffs' attempt to "recast" a differing site condition claim as "a change in project work condition claim," because the November 30, 2015 REA alleged that the Army Corps' additional inspections resulted from the rock at the site being of a "lesser quality." Gov't Reply at 12 (quoting Compl. Ex. C. at 12). In addition, although the November 30, 2015 REA alleged more than $7 million in additional costs as a result of "differing site conditions," the February 17, 2017 Amended Complaint alleges "additional costs" separately from "differing site conditions" costs. Gov't Reply at 13. Moreover, although the United States Court of Federal Claims has recognized "additional costs" claims for Government-incurred delay, those claims require an evidentiary showing different from that required by a differing site conditions claim. Gov't Reply at 13 (citing *George Sollitt Constr. Co. v. United States*, 64 Fed. Cl. 229, 240 (2005) (determining that a contractor's delay claim must show "that the [G]overnment's actions affected activities on the critical path of the contractor's performance of the contract")). As a result, Count One should either be dismissed or otherwise merged with Count Three.

### 4. The Court's Resolution.

#### a. Regarding Count One.

Count One of the February 13, 2017 Amended Complaint alleges a claim for "additional costs" resulting from the delay caused by the Downhole Inspections, that the Government argues should be dismissed, because it was not first presented to the CO for a final decision. Gov't Mot. at 16. Plaintiffs respond that this claim was presented to the CO for a final decision, because the CO was presented with the underlying "operative facts." Pl. Resp. at 11–13.

A claim for payment under the CDA must be presented to the CO for a final decision. *See* 41 U.S.C. § 7103(a)(1). After the CO issues that decision, a contractor may file an action on that claim in the United States Court of Federal Claims. *See* 41 U.S.C. § 7104(b)(1). "This standard, however, does not require rigid adherence to the exact language or structure of the original administrative CDA claim." *Scott Timber Co.*, 333 F.3d at 1365. As such, the United States Court of Federal Claims may adjudicate a claim if it arises from the "same operative facts" and requests "essentially the same relief," as a claim presented to the CO, even if the complaint at issue alleges a "slightly different legal theory." *Id.* Indeed, "[a]ll that is required is that the contractor submit in writing to the [CO] a clear and unequivocal statement that gives the [CO] adequate notice of the basis and amount of that claim." *Contract Cleaning*, 811 F.2d at 592.

In this case, the November 30, 2015 REA presented to the CO contained two different factual bases for an equitable adjustment: the Five Problem Shafts claim; and the Downhole Inspection claim. Compl. Ex. C. at 1; *see also* Gov't App'x at A45 (explaining that the REA was

filed for "additional work at drilled shafts due to differing site conditions *and disruption of work flow due to unnecessary inspections*" (emphasis added)). Both of these claims, however, were presented as a "differing site condition," but each claim arose from separate facts. *Compare* Compl. Ex. C at 5–10 (facts underlying the Five Problems Shafts claim) *with* Compl. Ex. C at 11–15 (facts underlying the Downhole Inspection claim).[5]

In the CO's April 18, 2016 final decision, the Five Problem Shafts claim and the Downhole Inspection claim were decided separately. *Compare* Compl. Ex. D at 35–48 (deciding the Five Problem Shafts claim) *with* Compl. Ex. D at 49–53 (deciding the Downhole Inspection claim). With respect to the latter, the CO found that the "crux of the 'Downhole Inspection Argument' appears to be that 'instead of a single inspection, or even an occasional re-inspection, [Plaintiffs were] forced to undergo a program whereby many multiple downhole inspections were required on a single shaft.'" Compl. Ex. D at 49. Therefore, the CO found that this claim could not properly be brought as a differing site conditions claim, because, "[i]n reality, this issue apparently relates to difficulties Goettle allegedly encountered in attempting to deal with the Contract-mandated inspection program." Compl. Ex. D. at 49. But, although the claim was brought under an "inapplicable clause," *i.e.*, the differing site conditions clause required by FAR 52.243-5, the CO found this claim to be "without merit anyway," because the August 17, 2012 Contract specifications provided for the required inspections. Compl. Ex. D at 50–52.

As such, Count One of the February 13, 2017 Amended Complaint alleges the same "operative facts" that were considered by the CO, when the April 18, 2016 final decision was issued, *i.e.*, Plaintiffs allege that they suffered delay and incurred additional costs, because of the Army Corps' inspections and re-inspections of the drilled pier shafts. Compl. ¶¶ 21–29. The difference is that the February 13, 2017 Amended Complaint alleges an "additional costs" claim based upon Government-caused delay, instead of a "differing site conditions" claim. But, in the April 18, 2016 final decision, the CO found that the differing site conditions clause was "inapplicable" to the substance of the Downhole Inspection claim, and denied it based on the CO's interpretation of the contract specifications regarding inspection. The November 30, 2015 REA, however, provided the CO with "clear notice" that Plaintiffs claimed "additional costs" as a result of the delay caused by the Army Corps' inspections, but the CO rejected that claim. *See Scott Timber Co.*, 333 F.3d 1365–66 (determining that United States Court of Federal Claims had jurisdiction to adjudicate claim when the CO was given "clear notice" of a breach of contract claim). The court has determined that it has jurisdiction to adjudicate the "additional costs" claim alleged by Count One of the February 13, 2017 Amended Complaint, because it was previously presented to and denied by the CO. *See* 28 U.S.C. § 1491(a)(2).

In the alternative, the Government argues that Count One should be merged with Count Three, *i.e.*, the Five Problem Shafts differing site condition claim, because both claims were presented as a result of differing site conditions in the November 30, 2015 REA. Gov't Mot. at

---

[5] The November 30, 2015 REA did not separate the costs incurred as a result of the Five Problem Shafts and Downhole Inspection claims. Instead, Plaintiffs claimed reimbursement for "total production costs," including all of the equipment moving costs related to additional inspections, as well as "those costs related directly to the extreme measures Goettle was forced to take at the 5 Problem Shafts." Compl. Ex. C. at 22.

16. But, these Counts are based on different operative facts and seek different relief. *Compare* Amend. Compl. ¶ 29 (requesting "additional costs" in the amount of $2,897,367.00) *with* Amend. Compl. ¶ 41 (requesting $604,957.00 for a differing site condition). Therefore, the court has also determined not to merge these two counts.

**b. Regarding Count Two.**

Count Two of the February 13, 2017 Amended Complaint alleges that the Army Corps breached the duty of good faith and fair dealing, by engaging in "arbitrary, capricious and self-serving conduct" and conducting multiple inspections and re-inspections of the drilled pier shafts. Amend. Compl. ¶ 31. The Government argues that this Count should be dismissed for lack of subject matter jurisdiction, because it was never presented to the CO for a final decision. Gov't Mot. at 11.

As a matter of law, the United States Court of Appeals for the Federal Circuit has held that a CDA claim in the United States Court of Federal Claims need not follow the "exact language or structure" of the administrative claim presented to the CO. *See Scott Timber Co.*, 333 F.3d at 1365–66. The claim presented to the CO, however, must provide the CO with "clear notice" of the basis for the relief. *Id.* For this reason, in *Reliance Insurance Company v. United States*, 931 F.2d 863 (Fed. Cir. 1991), our appellate court held that the United States Court of Federal Claims did not have jurisdiction to adjudicate a contractor's claim that the Government had breached the duty of good faith and fair dealing, when the contractor "only submitted to the [CO] claims for equitable adjustment to the contract." *Id.* at 866. In this case, as in *Reliance*, Plaintiffs allege a breach of the duty of good faith and fair dealing, when the only claims submitted to the CO were for an equitable adjustment to the contract. Plaintiffs argue, however, that they presented all of the operative facts to the CO, so that a final decision could have been issued on Plaintiffs' breach of duty of good faith and fair dealing claim. Pl. Resp. at 16.

The duty of good faith and fair dealing is implied in all contracts with the federal government, and requires parties "not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *See Metcalf Const. Co. v. United States*, 742 F.3d 984, 990–91 (Fed. Cir. 2014). The Government breaches this contractual obligation when it eliminates or rescinds contractual benefits "through action that is specifically designed to reappropriate the benefits and thereby abrogate the [G]overnment's obligations under the contract." *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014).

In this case, the November 30, 2015 REA did not include the operative facts underlying a breach of the duty of good faith and fair dealing, *i.e.*, it did not allege that the Government acted to abrogate its obligations under the Contract nor did it allege that the Government breached the Contract. Gov't App'x at A45 (11/30/15 REA "for additional work at drilled shafts due to differing site conditions and disruption of work flow due to unnecessary inspections"). Instead, the November 30, 2015 REA asserted only that: (1) Goettle assumed that only one inspection would be conducted per shaft; (2) instead, the Army Corps performed multiple inspections; and (3) this resulted in additional costs. Compl. Ex. C at 12-13; *see also* Gov't App'x at A61–62 (same). These operative facts were not sufficient to alert the CO of the possibility of a claim for breach of the duty of good faith and fair dealing.

Therefore, in contrast to the additional costs/delay claim alleged by Count One, the CO did not have notice of the operative facts underlying the breach claim alleged by Count Two, nor was the CO granted an opportunity to review this claim. Therefore, the court has determined that it does not have jurisdiction to adjudicate Count Two of the February 13, 2017 Complaint. *See* 28 U.S.C. § 1491(a)(2).

The court, however, has also determined that it would be inequitable to dismiss Count Two, particularly when Counts One and Three were properly submitted to the CO and there is no reason why Plaintiffs should not be able to present the claim underlying Count Two to the CO for a final decision.[6] Instead, the better course is to provide Plaintiffs the time necessary to present their claim for a breach of the duty of good faith and fair dealing to the CO for a final decision. As such, the court has determined that it will stay this case for three months, to allow Plaintiffs an opportunity to present a claim for a breach of the duty of good faith and fair dealing to the CO for a final decision, pursuant to CDA, and to allow the CO to consider that claim. *See* 41 U.S.C. § 7103(a)(1). If Plaintiffs are dissatisfied with the CO's decision, they may file an Amended Complaint to include a properly submitted breach of duty of good faith and fair dealing claim. *See* RCFC 15(a)(2) ("[A] party may amend its pleading . . . with . . . the court's leave.").

**c. Regarding Count Three.**

Count Three of the February 13, 2017 Amended Complaint alleges that Plaintiffs incurred additional costs as a result of a differing site condition at the Five Problem Shafts. Amend. Compl. ¶¶ 34–41.[7] This claim was submitted to and, denied by, the CO. Compl. Ex. C at 4–10 (11/30/15 REA); *see also* Compl. Ex. D at 35–48 (4/18/16 final decision). As such, the court has determined that it has jurisdiction to adjudicate Count Three of the February 13, 2017 Amended Complaint. *See* 28 U.S.C. § 1491(a)(2).

[6] The CDA provides that "[e]ach claim by a contractor against the Federal Government relating to a contract . . . shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). In this case, the Army Corps awarded the contract to Walsh on August 17, 2012, *i.e.*, less than six years ago. Gov't App'x at A4. Any claim for breach of the duty of good faith and fair dealing would have accrued after that date. *See Ariadne Fin. Servs. Pty. Ltd. v. United States*, 133 F.3d 874, 878 (Fed. Cir. 1998) ("[A contractor's] breach of contract claim accrue[s] when [the contractor] should have known that it had been damaged by the [G]overment's breach."). As such, any breach claim presented to the CO would be timely for purposes of the CDA.

[7] The Government does not contest the court's jurisdiction with respect to Count Three.

## IV. CONCLUSION.

For these reasons, the court denies the Government's February 13, 2017 Motion To Dismiss In Part, Or, In The Alternative, To Merge Counts, pursuant to RCFC 12(b)(1). In addition, this case is stayed until August 31, 2017, to provide Plaintiffs an opportunity to present their claim for a breach of the duty of good faith and fair dealing to a United States Army Corps of Engineers Contracting Officer for a final decision.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**